**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **MARY DEAN,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CITY OF WICHITA, KANSAS, et al.,**<br><br>**Defendants.** | **Case No. 25-1190-DDC-BGS** |

**MEMORANDUM AND ORDER**

Mary Dean has spent years asking the City of Wichita to pass an ordinance investigating the feasibility of reparations for Black Wichitans. The Wichita City Council didn't vote on that ordinance as she had hoped, so she advocated for it during the public-comment period of a city council meeting. After Ms. Dean spoke beyond her allotted time, Mayor Lily Wu asked security to escort her from the meeting. Ms. Dean, acting pro se,[1] filed this lawsuit against the City of Wichita, members of the Wichita City Council, and two city employees. She alleges defendants violated Title VI of the Civil Rights Act and the Constitution by failing to vote on her proposed ordinance, ending Wichita's DEI programs, and removing her from the city council meeting.

Before the court is defendants' Motion to Dismiss for Failure to State a Claim, Doc. 42. The court grants defendants' motion and dismisses all plaintiff's claims without prejudice. Because plaintiff's claims are dismissed, the court denies plaintiff's requests for judicial notice,

---

[1] Plaintiff proceeds pro se. The court construes her filings liberally and "hold[s] them to less stringent standards than formal pleadings drafted by lawyers[.]" *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the court doesn't assume the role of advocate for the pro se litigant. *Hall*, 935 F.2d at 1110.

Doc. 49, as moot. Before explaining those rulings, the court recites plaintiff's allegations and the legal standard governing a motion to dismiss.

## I. Background

The following background facts come from plaintiff's Amended Complaint, Doc. 36. The court accepts plaintiff's "well-pleaded facts as true, view[s] them in the light most favorable to Plaintiff[], and draw[s] all reasonable inferences from the facts in favor of Plaintiff[]." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021).

From 2023 to July 2025, plaintiff regularly attended meetings of the Wichita Diversity, Inclusion, and Civil Rights Advisory Board (DICRAB). Doc. 36 at 1. In that time, plaintiff "prepar[ed] policy proposals[] and engag[ed] community stakeholders under the belief that the board was a legitimate channel for systemic change." *Id.* One of plaintiff's main priorities was advancing an ordinance that "proposed a framework for reparative justice for Black residents of Wichita." *Id.* In May 2025, DICRAB voted to approve and advance that reparations ordinance to the Wichita City Council. *Id.*

Two months later, the Wichita City Council "voted to dismantle DICRAB and suspend all DEI-related programs[,]" citing a federal executive order that threatened to withhold funding from cities with DEI programs. *Id.* at 1–2. Plaintiff felt that vote "erased her work, silenced her voice, and invalidated the community's efforts toward racial justice." *Id.* at 1. She alleges one of the reasons the City Council ended DICRAB was because the City Council didn't want to consider her ordinance. *Id.* To plaintiff, the timing of the City Council dismantling DICRAB smacks of "retaliatory and discriminatory intent." *Id.*

To change the City Council members' minds, plaintiff signed up to speak during the public-comment section of the August 7, 2025, Wichita City Council meeting. *Id.* Speakers during the public-comment section are limited to five-minute speeches. *Id.* Plaintiff spoke

beyond the five-minute limit, and Wichita's mayor, Lily Wu, "requested [plaintiff's] removal following repeated verbal prompts." Doc. 36-2 at 1 (Ex. B). "No other speaker in recent history has been removed for this reason." Doc. 36 at 1. Plaintiff doesn't allege how long she spoke, or how many "verbal prompts" Mayor Wu gave before requesting her removal. *See id.* But she believes Mayor Wu removed her either because of plaintiff's race or as retaliation for her speech's content.[2] *See id.*

Based on these events, plaintiff alleges that all defendants violated (1) Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d; (2) the Equal Protection Clause of the United States Constitution, U.S. Const. amend. XIV § 1; and (3) the First Amendment of the Constitution, U.S. Const. amend I. Doc. 36 at 1–2. She seeks damages of about $1.8 billion under Title VI and 42 U.S.C. § 1983. *See* Doc. 36-4 at 1 (Ex. D). Defendants timely filed a joint Motion to Dismiss plaintiff's claims for failing to state a claim on which the court can grant relief. Doc. 42; Fed. R. Civ. P. 12(b)(6).

## II. Legal Standard

Under Rule 12(b)(6), a party may move the court to dismiss an action for failing "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). For a complaint to survive a Rule 12(b)(6) motion to dismiss, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S.

[2] Defendants proffer more details about this city council meeting in their Motion to Dismiss. *See* Doc. 43 at 2–3. But their effort is in vain; the court "cannot look beyond the four corners of the complaint[]" at the motion-to-dismiss phase, so the court does not consider those additional facts here. *Fuqua v. Santa Fe Cnty. Sheriff's Off.*, 157 F.4th 1288, 1297 (10th Cir. 2025).

at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1192 (10th Cir. 2009) ("The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law.").

When considering a Rule 12(b)(6) motion to dismiss, the court must assume that factual allegations in the complaint are true, but it is "'not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And, while this pleading standard doesn't require "'detailed factual allegations,'" it demands more than a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court explained, "'will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## III. Analysis

Plaintiff argues defendants violated federal law by (1) disbanding DICRAB, (2) failing to vote on plaintiff's proposed reparations ordinance, and (3) removing plaintiff from the August 7, 2025, City Council meeting. Doc. 36 at 1. Plaintiff argues each of those actions constitute race discrimination in violation of Title VI and the Equal Protection Clause, as well as First Amendment violations. *Id.* at 1–2.

The court understands the Amended Complaint to raise each of these claims against each defendant. *See id.* at 1; Doc. 43 at 2. But only some of plaintiff's claims are justiciable, so the court begins with a standing analysis. There, the court concludes it only has jurisdiction to review claims arising out of the August 7, 2025, City Council meeting. The court then addresses each of plaintiff's claims on the merits.

**A. Standing**

"[D]istrict courts have an independent obligation to address their own subject-matter jurisdiction and can dismiss actions *sua sponte* for a lack of subject-matter jurisdiction." *City of Albuquerque v. Soto Enters. Inc.*, 864 F.3d 1089, 1093 (10th Cir. 2017). Article III limits the federal courts' jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2. This means a "'plaintiff must have a personal stake in the case,' giving them standing to sue." *Shaw v. Smith*, 166 F.4th 61, 74 (10th Cir. 2026) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). Plaintiffs must demonstrate standing. *Id.*

To demonstrate standing, a plaintiff "must show: (1) an injury in fact; (2) a causal connection between the injury and the challenged act; and (3) a likelihood that the injury will be redressed by a favorable decision." *Kan. Jud. Rev. v. Stout*, 519 F.3d 1107, 1115 (10th Cir. 2008). An injury in fact must be "both (a) 'concrete and particularized' and (b) 'actual or imminent, not conjectural or hypothetical.'" *Shaw*, 166 F.4th at 75 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

As part of the particularized-injury requirement, federal courts can't consider "generalized grievances more appropriately addressed in the representative branches[.]" *Hill v. Warsewa*, 947 F.3d 1305, 1309 (10th Cir. 2020). As the Supreme Court put it, a plaintiff "claiming only harm to his and every citizen's interest in proper application of the Constitution and laws . . . does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573–74. That's why our Circuit has held plaintiffs lack standing to raise a challenge that "anyone in the country . . . could similarly claim[.]" *See N.M. Trappers Ass'n v. Torrez*, 178 F.4th 561, 571 (10th Cir. 2026). And the Supreme Court has also held a legislative initiative's proponents lack standing to defend the initiative unless state law gives them a "'distinct' role" from other supporters of a measure. *See Hollingsworth v. Perry*, 570 U.S. 693, 706–07 (2013).

Many of plaintiff's claims here rely on "generalized grievances." *See Hill*, 947 F.3d at 1309. Plaintiff argues that the "dismantling of DICRAB disproportionately impacted Black residents[,]" that the "dismantling of DEI infrastructure reflect[s] viewpoint discrimination and racial bias[,]" and that the president's "executive order threatening to withhold federal funding from cities with DEI programs" was an illegitimate basis for disbanding DICRAB. Doc. 36 at 2. But this complaint is "more appropriately addressed in the representative branches[.]" *Hill*, 947 F.3d at 1309 (quotation cleaned up). Plaintiff's personal stake in this case doesn't differ from "every citizen's interest in proper application of the Constitution and laws[.]" *See Lujan*, 504 U.S. at 573–74. Anyone "in the country . . . could similarly claim" that defendants' decision to disband DICRAB was unlawful. *See N.M. Trappers Ass'n*, 178 F.4th at 571. That conclusion means plaintiff's Complaint doesn't "state an Article III case or controversy[,]" and the court dismisses plaintiff's claims arising from defendants' decision to disband DICRAB for lack of subject-matter jurisdiction. *See Lujan*, 504 U.S. at 574.

Likewise, plaintiff lacks standing to challenge the Council's failure to vote on her reparations ordinance. Understandably, plaintiff is "deeply committed" to the ordinance she authored. *See Hollingsworth*, 570 U.S. at 707. But plaintiff's commitment, however genuine, can't confer standing on her. *Id.* Plaintiff hasn't identified, nor has the court located, any state or municipal law giving the plaintiff a "'distinct' role" entitling her to a vote on her proposed ordinance. *See id.* at 706. Once plaintiff proposed the ordinance to the City Council, her interest in the ordinance's passage was no different than any other citizen's. *See Lujan*, 504 U.S. at 573. Thus, the court dismisses plaintiff's claims arising from defendants' failure to vote on the reparations ordinance because it lacks subject-matter jurisdiction over those claims.

In contrast, plaintiff has standing to bring her remaining claims, all of which arise from defendants' decision to remove her from the August 7, 2025, City Council meeting. *See* Doc. 36 at 1–2. Plaintiff alleges the removal caused her "[e]motional distress and public humiliation[,]" Doc. 36-4 at 1 (Ex. D)—an actual, concrete, and particularized injury, as *Shaw* requires. 166 F.4th at 75. There is "a causal connection between the injury and" plaintiff's removal. *See Kan. Jud. Rev.*, 519 F.3d at 1115. And a "favorable decision" would redress plaintiff's injury with money damages. *See id.* The court thus has jurisdiction over these claims and, below, analyzes them on their merits.

### B. Claims Arising from the August 7, 2025 City Council Meeting

Plaintiff asserts claims against a municipality—the City of Wichita—and several individuals—Wichita's mayor, members of its City Council, its city manager, and its city attorney. She alleges that defendants' decision to remove her from the city council meeting violates Title VI of the Civil Rights Act and the Constitution of the United States. Defendants have moved to dismiss these claims in their entirety. The court grants defendants' motion and dismisses all plaintiff's claims premised on her removal from the city council meeting. Because the court's resolution of the constitutional claims also resolves plaintiff's Title VI claim, the court begins with the constitutional claims.

#### 1. Plaintiff's Constitutional Claims

Plaintiff argues defendants violated the Equal Protection Clause and the First Amendment, entitling her to recover money damages under 42 U.S.C. § 1983. Doc. 36 at 2. Defendants respond that the City can't be held liable for money damages because plaintiff hasn't identified an "official municipal policy" that violated her constitutional rights. Doc. 43 at 12; *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Defendants also argue that the individual defendants are entitled to qualified immunity on each constitutional claim. Doc. 43 at

6. The court agrees with defendants on both arguments. Below, the court outlines the municipal-liability and qualified-immunity standards, as they apply at the motion-to-dismiss phase, and then addresses each constitutional claim.

**a. Municipal Liability and Qualified Immunity Standards**

Start with municipal liability. A "local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694. That is, "a municipality"—like the City of Wichita—"cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. Instead, to hold a local government liable, a § 1983 plaintiff must allege that "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury[.]" *Id.* at 694. A policy or custom can take any of the following forms:

> "(1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused."

*Waller v. City and County of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (quoting *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010)). If a plaintiff can't identify a policy or custom that caused her constitutional injury, her § 1983 claim against a municipality fails.

Often, a plaintiff suing individual defendants for money damages under § 1983 must overcome a qualified immunity defense. "When a defendant asserts qualified immunity at the motion to dismiss phase, the plaintiff 'must allege facts sufficient to show (assuming they are true) that the (1) defendant plausibly violated their constitutional rights, and that (2) those rights were clearly established at the time.'" *Brown v. City of Tulsa*, 124 F.4th 1251, 1265 (10th Cir.

2025) (quotation cleaned up) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008)). That's so because the "doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once defendants have "asserted the defense of qualified immunity, the burden is on Plaintiffs to establish their right to proceed." *Matthews v. Bergdorf*, 889 F.3d 1136, 1143 (10th Cir. 2018).

Municipal-liability claims and qualified-immunity defenses share a common attribute: Plaintiff must demonstrate that defendants violated her constitutional rights. *See Monell*, 436 U.S. at 694; *City of Tulsa*, 124 F.4th at 1265. Plaintiff here has failed this burden. Take equal protection.

### b. The Equal Protection Clause

Plaintiff argues defendants violated the Equal Protection Clause through "selective enforcement of public comment rules[,]" which she alleges reflects "viewpoint discrimination and racial bias." Doc. 36 at 2. According to plaintiff, "no other speaker in recent history has been removed" for speaking over the time limit. *Id.* at 1. For their part, defendants argue the Amended Complaint "does not properly allege that defendants intentionally discriminated against the plaintiff on the basis of race[,]" and "does not even make an allegation" that plaintiff's removal "was discriminatory." Doc. 43 at 5–6. While defendants overstate the Amended Complaint's inadequacies on this front, the court agrees that plaintiff hasn't alleged facts sufficient to support an equal-protection claim.

A plaintiff alleging an equal-protection claim bears "the burden of proving the existence of purposeful discrimination causing an adverse effect." *Ashaheed v. Currington*, 7 F.4th 1236, 1250 (10th Cir. 2021) (quotation cleaned up). "Discriminatory intent can be proved directly or

circumstantially." *Id.* "Direct proof is showing that a distinction between groups of persons appears on the face of a state law or action." *Id.* (quotation cleaned up). Meanwhile, circumstantial "proof is showing that the plaintiff was treated differently from similarly situated persons who are 'alike in all relevant respects.'" *Id.* (quoting *Requena v. Roberts*, 893 F.3d 1195, 1210 (10th Cir. 2018)).

A plaintiff relying on differential treatment "must allege specific 'facts about any particular person or persons who were treated differently,' [and may] not rely on 'conclusory allegations.'" *Horocofsky v. City of Lawrence*, __ F.4th ___, 2026 WL 2673123, at *12 (10th Cir. 2026) (quoting *Brown v. Montoya*, 662 F.3d 1152, 1173 (10th Cir. 2011)). A plaintiff's allegation that defendants treated her differently than others of a different race or sex is ordinarily "insufficient without considering other factors[.]" *Morman v. Campbell Cnty. Mem'l Hosp.*, 632 F. App'x 927, 935 (10th Cir. 2015). The other factors a plaintiff must plead to show differential treatment "depends substantially on the facts and context of the case." *Jennings v. City of Stillwater*, 383 F.3d 1199, 1214 (10th Cir. 2004). For example, a plaintiff usually must plead more in cases involving discretionary decisions because differences "in treatment can be the product of a number of considerations, . . . many of them legitimate." *Id.*; *see also Gokool v. Okla. City Univ.*, 716 F. App'x 815, 819 (10th Cir. 2017) ("This general assertion of discrimination without any details whatsoever of events leading up to her dismissal, is insufficient to survive a motion to dismiss.") (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012) (quotation cleaned up).

Here, plaintiff hasn't alleged any direct proof of purposeful racial discrimination. Instead, she merely alleges that she "was treated inequitably" when defendant Mayor Wu removed her from the city council meeting. Doc. 36-3 at 1 (Ex. C). Plaintiff points to a few

"non-Black residents of Wichita [that] have exceeded the five-minute public comment limit" without being removed. *Id.* This "selective enforcement," plaintiff argues, "suggests discriminatory intent or impact." *Id.* at 2. But plaintiff hasn't shown that she is "'alike in all relevant respects'" to those other speakers. *See Ashaheed*, 7 F.4th at 1250 (quoting *Requena*, 893 F.3d at 1210). Plaintiff doesn't plead "specific 'facts about any particular person or persons who were treated differently[.]'" *See Horocofsky*, 2026 WL 2673123, at *12 (quoting *Montoya*, 662 F.3d at 1173). She doesn't plead "other factors," such as how long past the time limit she or others spoke, whether any of the defendants pursued deescalation before removing her from the meeting, or whether defendant Mayor Wu presided over meetings where others talked past the time limit. *See Morman*, 632 F. App'x at 935. Without "any details whatsoever of events leading up to her" removal, *Gokool*, 716 F. App'x at 819, plaintiff can't plausibly allege defendants treated her differently because of her race and not because of any "number of considerations, . . . many of them legitimate." *Jennings*, 383 F.3d at 1214.

Because plaintiff hasn't alleged sufficient facts to show defendants violated the Fourteenth Amendment, the court dismisses her equal-protection claims against all defendants. Next, the court turns to plaintiff's First Amendment claims.

**c. Plaintiff's First Amendment Claims**

Plaintiff alleges that defendants "violated her right to petition the government and engage in protected speech" by removing her from the city council meeting. Doc. 36 at 2. In her Response to defendant's Motion to Dismiss,[3] plaintiff recites the legal standard for a First

---

[3] Plaintiff filed two different responses to defendants' motion on the same day. *See* Doc. 45; Doc. 46. The court treats these two documents as one response and considers the arguments in each. They were filed on the same day, don't exceed the page limits set by the local rules when combined, and defendants' Reply responded to arguments in the second document. *See* Doc. 47 at 2. These facts, combined with the court's obligation to construe plaintiff's filings liberally, lead the court to consider both filings.

Amendment retaliation claim. Doc. 46 at 2. Defendants' Motion to Dismiss also proceeds as if the Amended Complaint raised both a challenge to the five-minute time limit and a retaliation claim. Doc. 43 at 9–10; *id.* at 13–14. So the court evaluates plaintiff's First Amendment claim on both fronts. *See Zokari v. Gates*, 561 F.3d 1076, 1085 (10th Cir. 2009) (whether a court should consider "possible, but improbable" claims not explicitly raised by the complaint "will turn on the fairness to the parties and the burdens on the court")

**i. The Five-Minute Time Limit**

Defendants argue the five-minute time limit for public commenters is constitutionally permissible because the city council meeting was a "limited public forum[.]" Doc. 43 at 10. Although defendants once again overstate the strength of their argument, the court agrees that plaintiff has failed to allege a First Amendment violation.

The First Amendment protects speech on government property differently depending on the type of "forum" where the speech occurs. Supreme Court precedent recognizes four kinds of public fora: (1) traditional public fora, (2) designated public fora, (3) limited public fora, and (4) nonpublic fora. *See Doe v. City of Albuquerque*, 667 F.3d 1111, 1128 (10th Cir. 2012). Only the second and third categories—"designated" and "limited" public fora—are relevant city council meetings. *See Shero v. City of Grove*, 510 F.3d 1196, 1202–03 (10th Cir. 2007). Restrictions in a limited public forum "must only be reasonable in light of the purpose served by the forum and be viewpoint neutral." *Id.* at 1202. In a designated public forum, however, "'the government may only impose content-neutral time, place, and manner restrictions that: (a) serve a significant government interest; (b) are narrowly tailored to advance that interest; and (c) leave open ample alternative channels of communication.'" *Id.* at 1203 (quoting *PeTA v. Rasmussen*, 298 F.3d 1198, 1204 (10th Cir. 2002)). The court doesn't decide whether a city council meeting is a

"designated" or "limited" public forum because the five-minute time limit can satisfy the stricter requirements applied to designated public fora. *See id.* at 1202.

*Shero* is instructive. There, the plaintiff argued that a three-minute time limit on public comments at a city council meeting was unconstitutional. *Id.* Rejecting that argument, the Tenth Circuit acknowledged "it is not entirely clear whether a city council meeting should be treated as a 'designated public forum' or a 'limited public forum[,]'" but that, regardless, the time limit was constitutional. *Id.* Applying the more stringent standard for designated public fora, the court found the time limit was "appropriately designed to promote orderly and efficient meetings[,]" and the plaintiff had "ample alternative channels of communication available[,]" such as "appearing in a local newspaper and circulating flyers." *Id.* at 1203.

*Shero*'s holding resolves plaintiff's First Amendment claim. Like the time limit in *Shero*, Wichita's five-minute time limit is content neutral and applies to all speakers. *See id.* The time limit "serves a significant government interest"—"orderly and efficient meetings[.]" *See id*. at 1203. The time-limit is also "narrowly tailored to advance that interest." *See id.* And, as in *Shero*, plaintiff has "ample alternatives of communication available" to her. *See id.* Plaintiff doesn't allege that she was removed before her five minutes were up, nor does she allege that she lacks alternative channels of speech. In short, plaintiff's First Amendment claim challenging the five-minute time limit is indistinguishable from *Shero*, and the court dismisses it.

Before moving to plaintiff's retaliation claim, the court pauses to address one more concern. In their Motion to Dismiss, defendants quote a District of New Mexico opinion for the proposition that the Tenth Circuit has concluded city council meetings are limited public fora. *Compare* Doc. 43 at 11 ("'The *Tenth Circuit's* conclusion comports with every United States Court of Appeals that has decided the issue[.]'" (quoting *Griffin v. Bryant*, 30 F. Supp. 3d 1139,

1180 (D.N.M. 2014) (emphasis added)), *with Griffin*, 30 F. Supp. 3d at 1180 ("The *Court's* conclusion comports . . . ." (emphasis added)). But as already explained, defendants' quotation doesn't square with the current state of the law in our Circuit. *See Shero*, 510 F.3d at 1202 (declining to decide whether city council meetings are limited public fora or designated public fora). Indeed, the opinion defendants cite itself acknowledges the Tenth Circuit has "refrain[ed] from categorizing city council meetings one way or the other." *Griffin*, 30 F. Supp. 3d at 1180.

Being a trial lawyer is a hard job and sometimes, the court realizes, trial lawyers make mistakes. Still, courts rely on professional advocates to provide accurate statements about precedent. This reliance is important particularly in pro se cases where the adversarial process often is diminished. The court reminds counsel: Accuracy is an important component of the duty of candor.

The court turns next to plaintiff's First Amendment retaliation claim.

**ii. Retaliation**

When a plaintiff alleges unconstitutional retaliation against "a defendant who is not the plaintiff's employer and when there is no contractual relationship between them[,]" courts in our Circuit apply a three-part framework. *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000). This framework requires a plaintiff to prove

> (1) that the plaintiff "was engaged in constitutionally protected activity"; (2) that the defendant's actions caused the plaintiff "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) that the "defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct."

*Id.* (quoting *Lackey v. County of Bernalillo*, 166 F.3d 1221, 1999 WL 2461, at *3 (10th Cir. 1999)). Defendants concede the first element—plaintiff engaged in constitutionally protected activity—but argue she hasn't alleged facts to satisfy the second element. Doc. 43 at 13.

Defendants correctly state that the *Worrell* test's second element—requiring a plaintiff to show they suffered "an injury that would chill a person of ordinary firmness"—is an objective one. *See Worrell*, 219 F.3d at 1212 (quotation cleaned up). Defendants also list many retaliatory actions they didn't take. *See* Doc. 43 at 13–14. For example, defendants congratulate themselves—albeit in conclusory fashion—that they didn't ban plaintiff from meetings for life, charge her criminally, or preclude her from proposing future ordinances. *Id.* But defendants don't cite any authority for those propositions, and the court doesn't read *Worrell* as requiring plaintiffs to plead such extreme injuries for a retaliation claim. *See* 219 F.3d at 1213 (lost employment opportunity satisfies the second element).

Plaintiff's Response doesn't address this argument at all, however. *See generally* Doc. 45; *see* Doc. 46 at 2. After reciting the three-part test from *Worrell*, plaintiff's Response merely states "[t]hese elements are satisfied by Plaintiff's factual assertions as pleaded." Doc. 46 at 2.

That response won't suffice. Even construing plaintiff's filings liberally, the court concludes any response to this argument is waived. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("A pro se litigant's pleadings are to be construed liberally[.]"); *United States v. Cervini*, 379 F.3d 987, 994 n.5 (10th Cir. 2004) ("Arguments not raised by the parties in their briefs are deemed waived."). If the court reached the opposite conclusion, it would functionally make plaintiff's arguments for her and "assume the role of advocate[,]" which it can't do. *See Hall*, 935 F.2d at 1110. Given plaintiff's wholesale failure to specify the theory of her First Amendment retaliation claim, the court dismisses the claim against all defendants. That leaves plaintiff's Title VI claims.

**2. Title VI**

Title VI prohibits discrimination "on the ground of race, color, or national origin" by "any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. "The two elements for establishing a cause of action pursuant to Title VI are (1) that there is racial or national origin discrimination and (2) the entity engaging in discrimination is receiving federal financial assistance." *Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 631 (10th Cir. 1993). The Supreme Court has held that Title VI "prohibits only intentional discrimination." *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001).

According to plaintiff, Wichita is subject to Title VI because it receives federal funding. Doc. 36 at 1. And defendants violated Title VI, she asserts, because they treated her differently than white speakers "who exceeded time limits but were not removed." *Id.* Defendants argue the court should dismiss the Title VI claims because (1) plaintiff isn't an "intended beneficiary" of a federally funded program; (2) defendants aren't "program[s] or activit[ies]" under Title VI; and (3) plaintiff doesn't allege intentional discrimination. Doc. 43 at 4–5.

Plaintiff's failure to plead intentional discrimination resolves the Title VI claims here. As discussed above, plaintiff hasn't alleged sufficient facts to raise an inference that defendants intentionally discriminated against her because of her race. Because plaintiff has failed to allege intentional discrimination under the Equal Protection Clause, she has failed to allege a violation of Title VI. *See Regents of Univ. of Calif. v. Bakke*, 438 U.S. 265, 287 (1978) ("Title VI must be held to proscribe only those racial classifications that would violate the Equal Protection Clause or the Fifth Amendment."), overruled on other grounds by *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181 (2023). Therefore, the court dismisses plaintiff's Title VI claims.

**C. Dismissal Without Prejudice**

The only issue remaining is whether the court should dismiss plaintiff's claims with prejudice. Defendants argue the court should dismiss the Complaint with prejudice but never explain why this is so. *See* Doc. 43 at 15; Doc. 47 at 5. Plaintiff argues that the court should dismiss her claims without prejudice because she is proceeding pro se. Doc. 46 at 3.

The court concludes it must dismiss plaintiff's claims without prejudice. Whether to dismiss with prejudice is a matter committed to the court's discretion. *Seale v. Peacock*, 32 F.4th 1011, 1027 (10th Cir. 2022). *But see id.* (explaining that the Circuit reviews de novo whether "leave to amend would be futile" (quotation cleaned up)). A "'dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) *and* granting leave to amend would be futile.'" *Id.* (emphasis in original) (quoting *Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014)). But in this case's context, the court can't discern whether amendment is futile without a proposed amendment before it. *See Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1131 (10th Cir. 1994) ("We do not require district courts to engage in independent research or read the minds of litigants to determine if information justifying an amendment exists.").

Our Circuit's precedent suggests that the court should err on the side of dismissing without prejudice. *See id.* ("[W]here the record clearly reflects that the non-moving party possesses additional facts necessary for an amendment and where that party has repeatedly expressed a willingness to amend, the court should reserve the non-movant leave to amend upon dismissal of the action"); *Seale*, 32 F.4th at 1029 (suggesting that dismissal with prejudice is appropriate only where claim's failure is "patently obvious"); *see also* 6 *Wright & Miller's Federal Practice and Procedure* § 1487 (3d ed. 2024) ("If a proposed amendment is not clearly futile, then denial of leave to amend is improper." (quoted and cited approvingly in *Seale*, 32

F.4th at 1029)). *But see Seale*, 32 F.4th at 1028 (affirming dismissal with prejudice where pleading didn't "support the necessary elements" of the claim).

This Order's Rule 12(b)(6) dismissals are based on insufficient allegations in the controlling Complaint. So, the court can't conclude that it's "patently obvious" that amendment "would be futile." *Knight*, 749 F.3d at 1190 (quotation cleaned up). The court thus makes this Order's dismissals ones without prejudice. If plaintiff properly can plead facts to cure her claims' shortcomings, she must seek leave to amend within 20 days of this Order. And that request must comply with our local rule, D. Kan. Rule 15.1—including submission of a proposed Amended Complaint. Should plaintiff fail to file a motion for leave to amend within 20 days of this Order, the Rule 12(b)(6) dismissals will convert to dismissals with prejudice. And, if plaintiff fails to move for leave to amend within the allotted time, the court will close this case.

## IV. Conclusion

The court concludes that the Amended Complaint fails to state any claims upon which the court can grant relief. The court therefore grants defendants' Motion to Dismiss, Doc. 42, and dismisses plaintiff's claims without prejudice. Because plaintiff's claims are dismissed, the court denies her Motion for Judicial Notice, Doc. 49, as moot.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion to Dismiss, Doc. 42, is granted. The court dismisses all claims asserted against all defendants without prejudice for refiling.

**IT IS FURTHER ORDERED THAT** plaintiff's Motion for Judicial Notice, Doc. 49, is denied as moot.

**IT IS SO ORDERED.**

**Dated this 29th day of September, 2026, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**